UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELSA HAM-JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-CV-2008 CDP |
| | ) | |
| UNITED AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Elsa Ham-Jones was employed by defendant United Airlines, Inc., until she resigned in 2009. She claims that United retaliated against her after she took leave under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. This matter is before me on United's motion for summary judgment on Ham-Jones' FMLA retaliation claim. I find that United is entitled to summary judgment because Ham-Jones has not demonstrated that she suffered a materially adverse employment action, which is required in order to establish a prima facie case of FMLA retaliation. Accordingly, because there are no genuine issues of material fact and United is entitled to judgment as a matter of law, I will grant United's motion.

## *Legal Standard*

In determining whether to grant summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the nonmoving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. The movant will be entitled to summary judgment if the nonmoving party has not made a sufficient showing on an essential part of his or her claim because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

I have viewed the facts in the light most favorable to Ham-Jones and the following is established for purposes of the summary judgment motion. The vast majority of the facts are undisputed.

## *<u>Background</u>*

Plaintiff Ham-Jones began working as a Customer Service Representative (CSR) for defendant United Airlines in 1984. Ham-Jones spent her career at Lambert International Airport in St. Louis. On June 3, 2008, Ham-Jones took FMLA leave for approximately two months and returned to work in August 2008. Upon her return, Ham-Jones was concerned about the effects of her medication, so she requested and received an accommodation relieving her of her outside duties. She was permitted to work indoors as a Ticket Agent until her resignation on June 23, 2009.

As a CSR, Ham-Jones was a member of the International Association of Machinists and Aerospace Workers, and the terms of her employment were governed by a collective bargaining agreement between the IAMAW and United Airlines. Under the CBA, Ham-Jones and other union members were required to abide by the "Rules of Conduct for IAMAW Represented Employees," to which United and IAMAW had mutually agreed.

The Rules of Conduct are divided into two categories. A violation of one of the Rules in the first category "will result in discharge unless mitigating factors are considered applicable," while a violation of a Rule in the second category "will result in disciplinary action, up to and including discharge." Violations of first-

category Rules are considered more serious than violations of Rules in the second category. Rule No. 2, a first-category rule, prohibits IAMAW-represented employees from providing upgrades, refunds, and other perks to friends, relatives, or co-workers. A companion second-category rule prohibited union-represented employees from providing these perks to *any* customer without approval from a supervisor or manager, positions senior to CSRs.

Ham-Jones testified that, in contrast to United's written policy, United permitted CSRs to provide perks to customers who were not friends, relatives, or co-workers if a senior CSR with the designation of "Service Director" – like Ham-Jones – approved the transaction. But even a Service Director could not give or approve of perks to friends, relatives, and co-workers without manager or supervisor approval. Ham-Jones testified that discharge could "be the result of violating that Rule No. 2, that it could be up to discharge. . . . The penalty, it would be either a level four or up to a discharge." Ham-Jones believed that under a prior supervisor, one of her co-workers had violated Rule No. 2 and been disciplined but had not been terminated. Ham-Jones was not aware of any other employee violating Rule No. 2 without being discharged. She testified that "United at some point started being more stricter with the rules" and "[t]he culture changed from being able to be flexible to a culture where you have to ask for

permission to do anything" and that she and other employees were never counseled on how to make that transition appropriately.

In late 2008, United discovered that a CSR in St. Louis had violated Rule No. 2.  The CSR, Joyce Pasley, told United management that other employees had also violated the rule.  Based on her accusations, United's Ticketing Fraud Unit began an investigation of ticketing abuses at its St. Louis location.  During the investigation, Ham-Jones' supervisor, Mike Weisbrodt, and the Fraud Unit determined that Ham-Jones had violated Rules No. 2 and 24 on several occasions, and Weisbrodt recommended that she be fired.  Ultimately, seven employees – including Ham-Jones – were recommended for discharge as a result of the investigation.  The other six employees were discharged, and Ham-Jones resigned.[1]

In a "Report of Non-Punitive Disciplinary action," dated May 5, 2009, Weisbrodt listed eight incidents that violated United's Rules of Conduct.  Ham-Jones does not dispute the facts of seven of the eight incidents or that she provided

---

[1] Pasley was one of the employees terminated, and she sued United for race discrimination.  *See Pasley v. United Air Lines, Inc.*, No. 4:10-CV-1128 RWS, 2011 WL 4014391 (E.D. Mo. Sept. 9, 2011) (granting United's motion for summary judgment).  As part of its *Pasley* case, United deposed Ham-Jones on April 13, 2011.  In the instant case, United relies on Ham-Jones' testimony from the 2011 deposition as well as her testimony in an April 12, 2012 deposition taken as part of discovery in this suit.

perks to customers. But she points out that she acted in response to requests from her co-workers and that the perks she provided were to her co-workers' friends and family, not her own. She asserts, therefore, that as a designated Service Director, she had the authority to approve these transactions in accordance with United's policies. Further, in some cases, her co-workers promised to provide her with approval from a supervisor, and she acted on the basis of her belief they would do so. Thus, she disputes that the infractions listed on her supervisor's report recommending her discharge were, in fact, violations of Rules No. 2 or 24.

Previously, Ham-Jones had been formally disciplined, under Rule No. 41, for providing perks to customers who were *not* friends, relatives, or co-workers. The details of her actions are not part of the record. Rule No. 41, which is a catchall, second-category rule, prohibits IAMAW-represented employees from "engaging in any conduct detrimental to [United] or which has the potential to adversely affect the company's relationship with customers, suppliers, employees, or the public." Its associated disciplinary action is "Level 1 to discharge." After negotiation between IAMAW and United, Ham-Jones was issued a "Level 3" disciplinary action on December 31, 2007. She was still on a Level 3 at the time of the ticketing-fraud investigation.

When Ham-Jones was recommended for discharge on May 5, 2009, she became entitled to an Investigative Review Hearing before a hearing officer, at which she would have been able to appear with her IAMAW representatives and present evidence. After consulting with the IAMAW and her then-fiancé, Ham-Jones decided to resign rather than go through with the hearing. She believed that IAMAW "didn't think that I had a case that they felt strongly about" and that the union had "thrown in the towel" on representing her during the hearing. Ham-Jones testified that IAMAW representatives had led her to believe that United's management was already determined to discharge her and there was no chance she would be able to argue successfully for lesser discipline than discharge.

In a letter dated June 23, 2009, the date on which the hearing had been scheduled, Ham-Jones resigned. She wrote that she was resigning "with duress"[2] and that her decision was "based on difficulties I have experienced in performing my duties over the past couple of years as a direct result of [my] mental and emotional impairments." She stated that she had been diagnosed with adult

---

[2] In her April 12, 2012 deposition, Ham-Jones testified that the duress was created by the union:

> Q: In the first paragraph [of the resignation letter] you mention resigning under duress. You are referring to your testimony earlier about the union feeling as though you wouldn't win your case?
>
> A: Correct.

attention deficit disorder, which had "adversely affected [her] ability to make rational decisions in [her] work and personal life," caused her "to be easily manipulated by others and, as a result," had "undermined [her] ability to perform [her] duties with the high standards to which [she] had become accustomed." These symptoms had been exacerbated by other mental impairments and medications, which had affected her "ability to maintain clarity, particularly during stressful situations."

On the following day, June 24, 2009, Ham-Jones applied for Social Security Disability Insurance benefits, listing her conditions as adult ADD, depression, anxiety-panic disorder, stress, and a bulging disc in her neck. She represented that her condition had begun interfering with her ability to work starting about a year earlier, on June 2, 2008. This was the day before she took FMLA leave.

### *FMLA*

The Family Medical Leave Act protects an employee's right to take a certain amount of unpaid leave for medical reasons. *See* 29 U.S.C. § 2601 *et seq*. The Act also prohibits employers from discriminating against their employees for taking FMLA leave. *Id.* §§ 2612, 2615(a)(1)–(2). If an employee believes that her employer discriminated against her because she exercised her FMLA rights, she can bring an FMLA retaliation claim. *Phillips v. Mathews*, 547 F.3d 905, 909 (8th

Cir. 2008). *See also Pulczinski v. Trinity Structural Towers, Inc.*, No. 11-2585, 2012 WL 3763625, at *7 (8th Cir. Aug. 31, 2012).

To establish a prima facie case of FMLA retaliation where there is no direct evidence, an employee must show that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the materially adverse action was causally linked to the protected conduct. *Phillips*, 547 F.3d at 912. *See also McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Once the plaintiff has set out a prima facie case, the employer has the burden of explaining its actions with legitimate, nondiscriminatory reasons. If the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reasons were a pretext for discrimination. *Chappell v. Bilco Co.*, 675 F.3d 1110, 1117 (8th Cir. 2012); *Whitley v. Peer Review Sys.*, 221 F.3d 1053, 1055 (8th Cir. 2000).

### *"Materially Adverse" Employment Action*

In her complaint, Ham-Jones alleged that she had been discharged in retaliation for her FMLA leave. Since then, she has repeatedly testified that she resigned her position, and the record unequivocally demonstrates that she resigned. Though she now admits that she was not fired, Ham-Jones appears to argue that United took other materially adverse employment actions against her when it (1) accused her of violating the Rules of Conduct and recommended her

discharge; (2) allegedly forced her to resign; and (3) scrutinized and questioned her when she returned from FMLA leave. A "materially adverse" action is one that would dissuade a reasonable employee from making a charge of employment discrimination. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011). In accordance with Supreme Court precedent, the Eighth Circuit has consistently held that a materially adverse employment action "cannot be trivial; it must produce some injury or harm." *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 644 (8th Cir. 2009) (internal quotation omitted). As discussed below, none of the actions United allegedly took against Ham-Jones – recommending her termination, forcing her to resign, and subjecting her to scrutiny and write-ups – rises to the level of "materially adverse" as required to establish a prima facie retaliation claim.

### *Recommendation for Termination*

Ham-Jones argues that the accusation by supervisor Weisbrodt and United's Ticketing Fraud Unit that she violated Rule No. 2 is a materially adverse employment action that will support a prima facie claim of FMLA retaliation. Although Weisbrodt based his recommendation of discharge on the accusation, it did not ultimately lead to any disciplinary action because Ham-Jones resigned. It is well-established in this Circuit that an internal investigation – even if it leads to

a recommendation of discharge – cannot constitute a materially adverse employment action unless it results in discipline.  *See, e.g.*, *Higgins v. Gonzales*, 481 F.3d 578, 587 (8th Cir. 2007) (recommendation that employee be terminated, without actual termination, was not materially adverse); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 891 n.5 (8th Cir. 2005) (unwarranted internal investigation was not materially adverse); *Jones v. Fitzgerald*, 285 F.3d 705, 715 (8th Cir. 2002) (holding same for First Amendment retaliation and stating that although the plaintiff-employee "ultimately may have been disciplined, even terminated, for the alleged violations is immaterial because she resigned, thereby mooting the necessity of any disciplinary action").  Because the recommendation did not result in discipline and Ham-Jones resigned without taking advantage of the review process available to her, Weisbrodt's recommendation that she be terminated cannot constitute a materially adverse employment action.

### *Resignation*

Ham-Jones also argues that United forced her to resign.  A forced resignation is actionable under the FMLA if it rises to the level of a "constructive discharge."  *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995).  To prove a claim of constructive discharge, an employee has to show that (1) a reasonable person in her situation would find the working conditions intolerable

and (2) the employer intended to force her to quit.  *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1083 (8th Cir. 2010).[3]

Here, the undisputed facts do not support a finding that United intended to force Ham-Jones to resign.  Rather, Ham-Jones wrote in her June 2008 resignation letter that she was resigning because she had trouble performing her work duties, which she attributed to ADHD, depression, anxiety, and the side effects of her medications.  She also testified at her deposition that she resigned because of her discussions with IAMAW representatives and her then-fiancé.  In her Statement of Uncontroverted Material Facts, Ham-Jones repeats that the IAMAW advised her to resign and that she did so because "she was under a lot of stress."  Ham-Jones does not allege that anyone from United counseled her to resign – or that she even spoke to anyone from United about resigning, before or after she did so.  A single conclusory statement that United "forced her to resign" in her response to United's motion for summary judgment is not enough to create a genuine issue of material fact when there is no evidence in the record to support the statement.  *See Reed v. Lear Corp.*, 556 F.3d 674, 678 (8th Cir. 2009) ("To overcome a motion for

---

[3]  Strictly speaking, Ham-Jones did not plead constructive discharge as a basis for her claim of FMLA retaliation.  Nonetheless, under the "liberal pleading requirements" of the Federal Rules, *e.g., Romine v. Acxiom Corp.*, 296 F.3d 701, 710 (8th Cir. 2002), I will assume that her complaint provided sufficient notice to United as to the nature of this claim.

summary judgment, a plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.") (internal brackets and quotation omitted). Because she has not shown that United intended to force her to quit, Ham-Jones' resignation cannot be construed as a materially adverse employment action for purposes of her FMLA retaliation claim.

### *Scrutiny and Other Employment Actions*

Ham-Jones alleged in her complaint that she was treated differently by United after she returned from FMLA leave in August 2008. She stated that "she was being scrutinized differently than that prior to her taking leave" and that she "was written up and verbally counseled repeatedly." Although neither party submitted evidence of the write-ups or affidavits from the person(s) who counseled Ham-Jones, United admitted in its answer to Ham-Jones' complaint that she was written up and verbally counseled, at least at some time during her employment. Making all inferences in Ham-Jones' favor, this treatment nonetheless cannot provide support for her retaliation claim because (1) it is not a materially adverse employment action, and (2) even assuming it were, Ham-Jones provides no evidence that it was causally related to her FMLA claim.

In order to be a "materially adverse" employment action, scrutiny and criticism must lead to tangible harm, such as a salary decrease or a functional demotion. *E.g., Higgins*, 481 F.3d at 584. Ham-Jones does not present any evidence that the write-ups, verbal counseling, and questioning of her work performance led to actual harm. She admits that it was Joyce Pasley's accusation – not increased scrutiny by United's management – that led to the investigation into whether she had violated United's Rules of Conduct. Though a reasonable employee may have found it unpleasant to be scrutinized or questioned, such acts are not "materially adverse" within the meaning of the FMLA because they did not affect her rank, pay, benefits, or other material conditions of her employment. *See, e.g., Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 785–86 (8th Cir. 2007) (supervisor rifling through delivery driver's truck and issuing unfair written discipline not materially adverse); *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000) (performance evaluation that "demeaned" corrections officer "in the eyes of her co-workers" not materially adverse); *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 927 (8th Cir. 2007) (employee not being "welcomed back to work in the way she would have liked" not materially adverse); *Goliday v. GKN Aerospace-St. Louis Aerospace*, No. 4:11-CV-729 JCH, 2012 WL 2885358, at *7–*8 (E.D. Mo. July 13, 2012) (operations manager whose

clock-in times were routinely verified and who was reprimanded and monitored via "check-in" phone calls and surprise visits did not show materially adverse action because such scrutiny was "a mere inconvenience").

Even if increased scrutiny and questioning could be deemed materially adverse, Ham-Jones' claim would still fail because she cannot show that it was causally related to her FMLA leave.  In her brief opposing United's motion for summary judgment, Ham-Jones appears to rely on a theory of temporal proximity to demonstrate the causal relationship between her FMLA leave and the scrutiny, write-ups, and verbal counseling she received upon her return, though she does not point to specific incidents.  Temporal proximity can only establish a causal relationship if it is "very close," *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002), and an amorphous reference to the year following her FMLA is not temporally proximate.  *See, e.g., Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2003) (interval of two months between protected activity and termination could not establish a causal connection).

Even if the gap between her FMLA leave and the subsequent scrutiny were very close, Ham-Jones' claim is contravened by the fact that her work performance deteriorated noticeably at the same time.  "A plaintiff's prima facie retaliation case, built on temporal proximity, is undermined where the allegedly retaliatory

motive coincides temporally with the non-retaliatory motive." *Wierman*, 638 F.3d at 1001. United has adduced evidence – in the form of Ham-Jones' June 2009 application for Social Security disability benefits – that Ham-Jones had great difficulty fulfilling her work duties in the year before her resignation. She wrote (and later testified) that she misplaced money from customers that was never recovered, repeatedly left her station unattended, forgot basic procedures and company policies, missed work, and had difficulty with tasks requiring sustained mental effort. Such a drastic deviation from her formerly high quality of work would have justified additional scrutiny. In fact, in her benefits application, Ham-Jones attested that the first day she experienced problems fulfilling the essential functions of her job was June 2, 2008, the day *before* she took FMLA leave. This belies her claim that the questioning and scrutiny she underwent were retaliatory. *See Smith v. Ashland, Inc.*, 250 F.3d 1167, 1174 (8th Cir. 2001) (employee whose history of inadequate work performance predated her protected activity could not establish that the protected activity was causally related to her termination).

Ham-Jones cites a Fifth Circuit case for the proposition that "employment events such as critiques or 'disciplinary filings . . . and even [employers who unjustly cite] poor performance by the employee'" could fall within the definition

of adverse employment action. Because the case actually holds the opposite, this reliance is unfounded. The relevant portion of the opinion is:

> [The employee's] problems . . . [are] non-actionable. . . . To hold otherwise would be to expand the definition of "adverse employment action" to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee – anything which *might* jeopardize employment in the future. Such expansion is unwarranted.

*Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (emphasis in original), *abrogated on other grounds by Burlington N.*, 548 U.S. at 60. Furthermore, *Mattern* and *Montandon*, the other case on which Ham-Jones relies, both ultimately held that the plaintiff-employee failed to establish that he suffered an adverse employment action. *See, e.g., Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (forced move to a new office and negative evaluation not materially adverse). In other words, they provide no support for Ham-Jones' claim that she suffered materially adverse actions.

Ham-Jones also appears to argue that (1) assigning her to a position that required considerable decision-making skills upon her post-FMLA leave request for accommodation and (2) not permitting her to retain her travel or retirement benefits upon her resignation should be construed as materially adverse employment actions.

Ham-Jones failed to plead these theories in her complaint, and I cannot consider them now.  Though "the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment."  *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004).  *See also Pulczinski*, 2012 WL 3763625, at *7  (district court properly refused to consider additional acts, argued at summary judgment, as potentially adverse employment actions when plaintiff did not plead those acts in his complaint); *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

### *United's Non-Discriminatory Reason for Recommending Discharge*

Even if Ham-Jones could establish a prima facie case of retaliation, her claim would not ultimately succeed because United has promulgated a non-discriminatory, legitimate reason for recommending she be terminated: its good-faith belief that Ham-Jones violated its Rules of Conduct.  To raise a question about whether United's stated reason was a pretext for discrimination, Ham-Jones must point to "enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive."  *Wierman*, 638 F.3d at 995.  The burden

ultimately rests on Ham-Jones to show a genuine issue for trial about whether the employer acted based on an intent to discriminate rather than on a good-faith belief that the employee committed misconduct justifying an adverse employment action. *Id. See also McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 855, 862 (8th Cir. 2009); *Chappell*, 675 F.3d at 1117.

In this case, the evidence that Ham-Jones relies upon bolsters United's reason for the accusation, rather than calling it into question. She admits that the penalty for violations of Rule No. 2 could – and usually did – result in discharge; that her co-worker, Joyce Pasley, accused her and others of violating Rule No. 2; and that United ultimately discharged six other employees – some of whom had never taken FMLA leave – as a result of its investigation of such violations at its St. Louis location. Though Ham-Jones disputes whether the ticketing transactions on which the accusation was based were actually violations of company policy, she does not dispute – for the most part – that they happened.[4] In short, Ham-Jones does not raise any genuine doubt as to whether United acted on a good-faith belief when it accused her of violating Rule No. 2. Rather, she acknowledges that

---

[4] Ham-Jones disputes the factual circumstances of one of the eight ticketing transactions listed as support for Weisbrodt's recommendation that she be discharged.

United took violations of Rule No. 2 seriously and had reason to believe she had violated it.

In *Johnson*, AT&T fired Michael Johnson after it concluded through an investigation that he had made bomb threats against the company. *Johnson v. AT&T Corp.*, 422 F.3d 756, 762–63 (8th Cir. 2005). Johnson filed suit and alleged he had been fired because of his race, and he disputed that he had made the threats. The district court granted summary judgment in favor of AT&T and the Eighth Circuit affirmed, holding that:

> Contrary to Johnson's assertion, the proper inquiry *is not* whether AT & T was factually correct in determining that Johnson had made the bomb threats. Rather, the proper inquiry is whether AT&T honestly believed that Johnson had made the bomb threats. Thus even if AT&T had no solid proof that Johnson made the bomb threats, and even if AT&T was mistaken in its belief . . ., any such mistake does not automatically prove that AT&T was instead motivated by unlawful discrimination.

*Id.* (emphasis in original) (internal citation omitted). Like Johnson did, Ham-Jones disputes that her actions actually constituted violations of the Rules of Conduct, but that is not the relevant inquiry. Critically, Ham-Jones points to no evidence that tends to show that United acted with any other motivation than a good-faith belief that she had violated Rule No. 2 when it investigated her, accused her of the violation, and recommended her discharge.

Based on the foregoing, I find that United is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED that** defendant's motion for summary

judgment [#34] is **GRANTED.** A separate judgment in favor of the defendant is

entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2012.